TERRENCE GERRARD FORD, Appellant, *v.*
THE STATE OF NEVADA, Respondent.

No. 43310

April 27, 2006                                     132 P.3d 574

*Philip J. Kohn*, Public Defender, and *Sharon G. Dickinson*, Deputy Public Defender, Clark County, for Appellant.

*George Chanos*, Attorney General, Carson City; *David J. Roger*, District Attorney, and *James Tufteland*, Chief Deputy District Attorney, Clark County, for Respondent.

400

Before DOUGLAS, BECKER and PARRAGUIRRE, JJ.

## OPINION

*Per Curiam:*

A jury convicted appellant Terrence Gerrard Ford of one count of conspiracy to commit robbery and one count of robbery with the use of a deadly weapon. During jury selection at Ford's trial, the State used peremptory challenges to exclude three African-American prospective jurors from the jury. Ford objected to their exclusion under *Batson v. Kentucky*,[1] arguing that the State exercised its peremptory challenges based on race. The district court disagreed and overruled Ford's objection. On appeal, among other issues, Ford assigns error to the district court's ruling on his *Batson* objection.[2]

---

[1]476 U.S. 79 (1986).

[2]Ford also assigns error to the following aspects of his trial: (1) the district court improperly permitted prior bad act evidence without a hearing or limiting instruction, (2) the district court incorrectly instructed the jury on the definition of "deadly weapon," (3) the State failed to prove use of a deadly weapon beyond a reasonable doubt, (4) the district court erred by not giving an alibi instruction sua sponte, and (5) the district court erred by refusing to suppress an alleged suggestive identification process. We conclude that each of Ford's additional arguments lacks merit.

We conclude that the district court did not err by overruling Ford's *Batson* objection. Under the recent United States Supreme Court decision in *Miller-El v. Dretke*,[3] a court must look at the totality of the jury-selection process to determine whether the prosecutor's stated reasons for a particular peremptory challenge are pretext for discrimination. We conclude that the district court's finding that the State's reasons for exercising its peremptory challenges was not a pretext for discrimination is supported by the record of the jury-selection process. We therefore affirm Ford's conviction.

## FACTS

Ford's conviction was based on his robbery of a Del Taco drive-through with an accomplice who brandished a gun. Eric Tanguma was working one night at a Del Taco drive-through window when two men on foot approached the window. One man demanded money and the other man pointed a gun at Tanguma. Tanguma thought it was a joke because he knew the man who demanded money from high school six years earlier, and that same person had come into the Del Taco a couple of weeks earlier and had chatted with Tanguma.

After the robbery, the police interviewed Tanguma, and he told them that he recognized one of the robbers from high school[4] and that he had seen and talked to that same person in the Del Taco recently. Tanguma, however, could not remember the man's name. A week after the robbery, Tanguma met with a Las Vegas Metropolitan Police Department (LVMPD) detective to look through high-school yearbooks to ascertain the name of the person he recognized as one of the robbers. While looking through yearbooks, Tanguma found the person's picture—the man's name was Terrence Ford.

During jury selection at Ford's trial, the State used its peremptory challenges to exclude three African-American prospective jurors: Juror Wit, Juror And, and Juror Bri. Ford's counsel objected to the State's use of its peremptory challenges as discriminatory under *Batson*.

With regard to Juror Wit, the State explained that it excluded her because she had been arrested for domestic violence. Although the charges were dropped and Juror Wit stated that she would be impartial, the State felt that she would have difficulty evaluating this case based solely upon one person's word. The State indicated domestic violence cases frequently rely upon the testimony of one witness and was concerned that Juror Wit, having experienced a

---

[3]545 U.S. 231, 240 (2005).

[4]At trial, Tanguma testified that he had eaten lunch with Ford nearly every day for two years and that he was certain Ford was one of the robbers.

dismissal in her own case, might be unable to convict someone without some evidence beyond the victim's testimony.

As to Juror And, the State explained that she stated that her brother had been convicted of assault and battery after a jury trial, but the victim in that case was untruthful when testifying. The prosecutor also recounted that Juror And thought that her brother was treated unfairly, although she stated that she could remain impartial to deliberate in Ford's case. The State argued that her answers during voir dire evidenced a distrust of the jury system, which was why it excluded her.

With respect to Juror Bri, the State argued that he was also arrested and charged with domestic violence, to which he pleaded guilty. The State indicated that it excluded him for the same reasons it excluded Juror Wit. The State also explained that Juror Bri had stated that he thought he was treated unfairly and that he was really the victim in his case, although he maintained that he could remain impartial. The State contended that Juror Bri's history was evidence that he would have trouble remaining impartial.

Finally, the State noted that it had not excluded two other African-American jurors. In response to the State's explanations, Ford's counsel asserted that other, non-African-American prospective jurors on the panel had been arrested or had family who had been arrested, but the State did not exclude those people. Ford's counsel also argued that each of the jurors that the State excluded maintained that they would be impartial. In reply, the State argued that the only crimes involving other jurors were DUIs, which are different situations than domestic violence, for which Juror Wit and Juror Bri were arrested. Also, the State contended that each of the other jurors who were linked to crimes stated that they or their family were treated fairly, whereas Juror And and Juror Bri stated that they felt the proceedings in their cases were unfair. Based on these arguments, the district court found the State's reasons race-neutral and overruled Ford's *Batson* objection.

After deliberation, the jury returned a guilty verdict for Ford on both counts: conspiracy to commit robbery and robbery with use of a deadly weapon. The district court sentenced Ford to a 24-to-60-month sentence for conspiracy, a concurrent 48-to-180-month sentence for robbery, and a consecutive 48-to-180-month sentence for the deadly weapon enhancement.

## DISCUSSION

Ford raises several issues on appeal; however, we focus on the issue of whether the district court erred in overruling Ford's *Batson* objection to discuss the application of *Miller-El* to *Batson* analyses. After the State used three of its four peremptory chal-

lenges to exclude African-American prospective jurors, Ford lodged a *Batson* objection, arguing that the State's use of peremptory challenges was discriminatory.

When ruling on a *Batson* objection, the trial court should engage in the following three-step analysis: (1) the opponent of the peremptory challenge must make out a prima facie case of discrimination, (2) the production burden then shifts to the proponent of the challenge to assert a neutral explanation for the challenge, and (3) the trial court must then decide whether the opponent of the challenge has proved purposeful discrimination.[5]

Under the first step, the trial court should consider the totality of the circumstances in determining whether the opponent of the peremptory challenge has made a prima facie showing of discrimination.[6] This step is moot, however, where, as here, the State gave its reasons for its peremptory challenges before the district court determined whether the opponent of the challenge made a prima facie showing of discrimination.[7]

Under step two, the State's neutral reasons for its peremptory challenges need not be persuasive or even plausible.[8] Where a discriminatory intent is not inherent in the State's explanation, the reason offered should be deemed neutral.[9] In this case, the prosecutor stated that she felt the excluded jurors would "have a distrust of the system just based on their experiences and what they pointed out to the Court in being arrested." Specifically, with regard to Juror Wit and Juror Bri, the prosecutor explained that they had been arrested for domestic violence. The prosecutor described domestic violence cases as one-person's-word-against-another situations, which would be the case here: Tanguma's word against Ford's. In addition, the prosecutor stated that even though Juror Bri had pleaded guilty in his case, he testified during voir dire that he thought he was treated unfairly because he felt he was the victim. The prosecutor also explained that Juror And exhibited a distrust of the jury system because, even though a jury had convicted

---

[5]*Kaczmarek v. State*, 120 Nev. 314, 332, 91 P.3d 16, 29 (2004) (citing *Purkett v. Elem*, 514 U.S. 765, 767 (1995)).

[6]*See Libby v. State*, 113 Nev. 251, 255, 934 P.2d 220, 222 (1997).

[7]*See Kaczmarek*, 120 Nev. at 332, 91 P.3d at 29.

[8]*Id.* at 333, 91 P.3d at 29 (citing *Purkett*, 514 U.S. at 768).

[9]*Id.*

her brother, Juror And testified during voir dire that the victim in his case lied and her brother was treated unfairly. We conclude that the district court did not err in finding that the State's reasons for excluding the three African-American prospective jurors in this case were facially neutral.

In step three, the persuasiveness of the State's explanation is relevant.[10] The district court must determine whether the opponent of the peremptory challenge has met the burden of proving purposeful discrimination.[11] An implausible or fantastic justification by the State may, and probably will, be found to be pretext for intentional discrimination.[12] In *Miller-El*, the United States Supreme Court addressed the "practical difficulty of ferreting out discrimination" in peremptory challenges.[13]

Ford argues that based on the analysis in *Miller-El*, the district court failed to delve deeply enough into the reasons given by the State for excluding the three African-American prospective jurors. Ford contends that the State's explanations exhibit an intent to discriminate for two reasons: (1) a comparison of the State's reasons for its peremptory challenges with voir dire responses from jurors who served on the jury demonstrates that the State's reasons were a pretext for discrimination, and (2) a comparison of questions the State asked of the three excluded African-American prospective jurors with the questions the State asked of prospective jurors who served on the jury evidences an intent to discriminate.

*Miller-El* involved the use of peremptory challenges by Texas prosecutors in a death penalty case. During jury selection at Miller-El's trial, the prosecutors used peremptory challenges to exclude ten African-American prospective jurors from the panel. Miller-El objected that the strikes were racially based, but the trial court overruled the objection. The jury ultimately voted to sentence Miller-El to death. While Miller-El's appeal was pending, the United States Supreme Court decided *Batson*, and therefore, the Texas appeals court remanded the case to the trial court to determine the issue of discrimination under *Batson*.[14] The trial court found no discrimination, and the Texas appeals court affirmed. Miller-El sought federal habeas relief, and the case ultimately made its way to the Supreme Court.[15]

---

[10]*Id.*

[11]*Id.* at 334, 91 P.3d at 30 (citing *Purkett*, 514 U.S. at 768).

[12]*Id.*

[13]545 U.S. at 238.

[14]*See Miller-El v. State*, 748 S.W.2d 459, 461 (Tex. Crim. App. 1988).

[15]*Miller-El*, 545 U.S. at 235-37.

Reversing the Texas court, the Supreme Court discussed four categories of evidence in determining that the Texas prosecutors' reasons for peremptory challenges of African-American prospective jurors were a pretext for discrimination: (1) the similarity of answers to voir dire questions given by African-American prospective jurors who were struck by the prosecutors and answers by non-black prospective jurors who were not struck, (2) the disparate questioning by the prosecutors of African-American and nonblack prospective jurors, (3) the use by the prosecutors of the "jury shuffle,"[16] and (4) evidence of historical discrimination against minorities in jury selection by the district attorney's office.[17]

Here, the State did not engage in jury shuffling,[18] and Ford did not present evidence that the Clark County District Attorney's Office had historically discriminated against minority jurors. Therefore, we focus our discussion on categories (1) and (2).

*Comparison of voir dire answers given by African-American prospective jurors to answers given by nonblack prospective jurors*

First, the Supreme Court compared African-American prospective jurors who were excluded to nonblack prospective jurors who were permitted to serve. "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step."[19]

Here, Ford argues that the State's reasons for excluding the three African-American prospective jurors—Juror And, Juror Bri, and Juror Wit—do not hold up when compared to prospective jurors who were permitted to serve on the jury.

*Prospective Juror And*

During voir dire, Juror And testified that her brother had been arrested and convicted of assault and battery a year earlier. She

---

[16]Under Texas law, during voir dire in a criminal case, either party may literally shuffle the cards containing the panel members' names to rearrange the order in which the panel members are seated for questioning. *See id.* at 253.

[17]*Id.* at 240-65; *see also id.* at 279 (Thomas, J., dissenting) (enumerating each category of evidence considered by the majority).

[18]*See Williams v. State*, 121 Nev. 934, 944-45, 125 P.3d 627, 634 (2005) (applying *Miller-El*'s discussion of the "Texas jury shuffle" to dismissal of jury venires for discriminatory purposes).

[19]*Miller-El*, 545 U.S. at 241.

stated that her brother was treated unfairly because there was not enough evidence to convict him. She said that the trial came down to her brother's word against the victim's word, but the victim did not tell the truth, and the jury convicted her brother based solely on the testimony of one person—the victim. Even though she felt that her brother was treated unfairly, she stated that she does not hold it against the police or the district attorney, and the situation would not affect her deliberation in Ford's case.

When giving reasons for excluding Juror And, the prosecutor stated that even though Juror And's brother had gone through a jury trial, Juror And felt it was unfair because the jury relied on the testimony of just one person. The prosecutor reiterated Juror And's concern that the victim in her brother's case was untruthful. To the prosecutor, Juror And's answers showed distrust of the jury system.

Two jurors who were not excluded by the State—Juror Ste and Juror Hau—also had close family members who had been convicted of crimes. Juror Ste stated during voir dire that he had a "wayward brother" who had been arrested and served prison time for "everything" in Missouri, Tennessee, and Arkansas. When asked whether his brother had been treated fairly, he replied, "Every time." Juror Ste also stated that he could be fair and impartial and that his brother's indiscretions would not affect his ability to deliberate in Ford's case. Juror Hau stated that of his seven children, he had one daughter who had been arrested for a DUI. When asked whether he thought his daughter was treated fairly, Juror Hau stated that she was. Juror Hau indicated that he could remain fair and impartial and that his daughter's arrest would not affect his ability to deliberate.

Unlike Juror Ste and Juror Hau, Juror And felt as though her brother was treated unfairly. Therefore, the State's reasons for striking Juror And were inapplicable to Juror Ste and Juror Hau, both of whom thought that the system had treated their relatives fairly. Juror And's answers to voir dire questions were not similar to Juror Ste and Juror Hau and no *Miller-El* violation occurred.

### Prospective Juror Bri

During voir dire, Juror Bri testified that he had been arrested for domestic violence. He stated that he thought he was not treated fairly because he felt he was the victim. Nevertheless, he pleaded guilty, served probation, and paid a fine.

In defending its peremptory strike of Juror Bri, the prosecutor stated first that Juror Bri had been arrested for domestic violence, which was usually a one-person's-word-against-another situation,

and that would be the case in Ford's trial with Tanguma being the only witness to the robbery. The prosecutor also explained that even though he pleaded guilty, Juror Bri thought he was treated unfairly.

Only one other prospective juror had been arrested for domestic violence, Juror Wit, whom the State also struck. Two other jurors had been arrested, not for domestic violence, but for DUIs: Juror Smi and Juror Har. Juror Smi indicated that he paid a fine, was treated fairly, and does not hold anything against anyone. Juror Har stated that his DUI arrest yielded positive results because he had quit drinking. He also did not harbor animosity toward the police or district attorney.

Again, the record does not support Ford's assertion that other similarly situated jurors were treated differently. Aside from the inherent difference in the prosecution and proof of a DUI versus a domestic violence case, neither of the other jurors thought that they had been unfairly treated. Therefore, we conclude that the district court did not err in finding that the State did not treat Juror Bri differently from the other jurors or exercise its challenge with a discriminatory purpose.

### Prospective Juror Wit

Juror Wit stated that she had been arrested for domestic violence nine years previously. She spent a couple of days in jail, and the charges were dismissed. She indicated that she was treated fairly and does not harbor animosity toward the police or district attorney. She also stated that her arrest would not affect her deliberation and that she could be fair and impartial.

As reasons for striking Juror Wit, the prosecutor gave the same rationale that she gave for striking Juror Bri. Juror Wit had been arrested for domestic violence, a type of crime that comes down to one person's word against another's. The prosecutor felt that such a history would make it difficult for Juror Wit to remain impartial. The prosecutor pointed out that of the other prospective jurors, only Juror Bri, who was also struck, had a domestic violence arrest. Other prospective jurors who were arrested, but who served on the jury, were arrested for DUIs.

Because Juror Bri was arrested for and convicted of domestic violence, and the prosecutor struck him from the jury, this demonstrates that the prosecutor was actually concerned about the type of crime for which prospective jurors were arrested. Other prospective jurors who were arrested but who served on the jury were arrested for DUIs. Therefore, comparing Juror Wit to other similarly situated prospective jurors gives rise to the conclusion

that the State's reasons for striking Juror Wit were not pretext for discrimination.

*Comparison of voir dire questions asked of African-American prospective jurors with questions asked of nonblack prospective jurors*

Ford also contends that a comparison of the questions the State asked of the excluded African-American prospective jurors with the questions asked of prospective jurors who served on the jury shows intent by the State to discriminate.

In *Miller-El*, the Supreme Court also looked at the disparity of questions asked of African-American prospective jurors who were excluded and questions asked of nonblack prospective jurors who remained on the panel. In so doing, the Court noted that the State gave two different explanations for seeking the death penalty against Miller-El: one general and one graphic. The Court determined that the State used the graphic explanation when a larger percentage of the panel was made up of African-American prospective jurors and that it used the general explanation when there was a lower percentage of African-American prospective jurors on the panel.[20] Therefore, the Court concluded that the State intentionally gave a larger percentage of African-American prospective jurors the graphic explanation in an attempt to dissuade them from serving on the jury.[21]

In addition, the Court addressed the State's questions that elicited the jurors' opinions on minimum sentencing in murder cases. The Court noted that the State informed nonblack prospective jurors that Texas law provided a minimum five-year term, but the State did not so inform African-American prospective jurors. The Court deemed this type of questioning trickery. The Court concluded that the State could not effectively explain the disparity in questioning, which led to the conclusion that it was the result of discrimination.[22]

Here, the record does not demonstrate that the State asked different general questions of African-American jurors than any other juror. It asked questions of jurors based upon a juror's previous answers to a question, such as earlier statements that Juror And felt her brother was treated unfairly because the victim in his case had lied. Ford cannot point to any disparity between the questioning of African-American prospective jurors and nonblack prospective ju-

---

[20]The different panels resulted from ''jury shuffling.''

[21]*Miller-El*, 545 U.S. at 255-60.

[22]*Id.* at 261-63.

rors. However, Ford contends that the prosecutor's lack of questions exhibits an intent to discriminate. Ford argues that "the prosecutor did not challenge any of these prospective jurors for cause yet seemed to make a 'for cause' argument for her reason for using a peremptory challenge to strike them off the jury."

We note that "[t]he very purpose of peremptory strikes is to allow parties to remove potential jurors whom they suspect, but cannot prove, may exhibit a particular bias."[23] Ford presented no evidence to the district court, points to no evidence in the record, and cites no authority that the State's failure to assert a for-cause challenge to an excluded juror should be considered in evaluating a *Batson* violation relating to peremptory challenges. We therefore conclude that this argument lacks merit and, as no *Miller-El* disparate questioning occurred here, the district court did not err in denying Ford's *Batson* challenge.

## CONCLUSION

We conclude, based upon the entire voir dire record, that Ford fails to demonstrate that the State intentionally discriminated against the three excluded African-American prospective jurors. We hold that the district court did not err in overruling Ford's *Batson* objection. Therefore, we affirm Ford's conviction.

---

[23]*Id.* at 292-93 (Thomas, J., dissenting).