An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

ANTONIO CHAVEZ-JUAREZ,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 65279

**FILED**

NOV 2 0 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of one count of sexual assault of a minor, four counts of lewdness with a child, one count of unlawful use of a minor as a subject of a sexual portrayal in a performance, and one count of possession of a visual presentation depicting sexual conduct of a child. Second Judicial District Court, Washoe County; Egan K. Walker, Judge.

On multiple occasions appellant Antonio Chavez-Juarez sexually assaulted an eight-to-nine-year-old girl, who was the daughter of his then girlfriend. Chavez-Juarez was charged with two counts of sexual assault of a minor, four counts of lewdness with a child, one count of unlawful use of a minor as a subject of a sexual portrayal in a performance and one count of possession of a visual presentation depicting sexual conduct of a child. Following a four-day trial, the jury found Chavez-Juarez guilty on all counts except the first count of sexual assault of a minor. The district court sentenced him to a total term of 55-years-to-life in prison.

The issues on appeal are: (1) whether the district court abused its discretion in rejecting Chavez-Juarez's *Batson* challenges and (2) whether the district court abused its discretion at sentencing.

14-38303

*The district court did not abuse its discretion in rejecting Chavez-Juarez's Batson challenges*

Chavez-Juarez argues that the district court violated his right to equal protection by permitting the State to use peremptory strikes against three prospective jurors, on account of their ethnicity, in violation of *Batson v. Kentucky,* 476 U.S. 79 (1986).

"We review the district court's ruling on a *Batson* challenge for an abuse of discretion." *Nunnery v. State,* 127 Nev. ___, ___, 263 P.3d 235, 258 (2011). "Discriminatory jury selection in violation of *Batson* generally constitutes structural error that mandates reversal." *Diomampo v. State,* 124 Nev. 414, 423, 185 P.3d 1031, 1037 (2008) (internal quotations omitted).

*Batson* and its progeny disallow the use of peremptory strikes to systematically exclude jurors based on their race or ethnicity. 476 U.S. at 86; *see also Conner v. State,* 130 Nev. ___, ___, 327 P.3d 503, 508-09 (2014) (applying *Batson* to prohibit the discriminatory exclusion of jurors based on race or ethnicity). In *Batson,* the United States Supreme Court articulated a three-step process for evaluating the constitutionality of a peremptory strike. 476 U.S. at 96; *see also Ford v. State,* 122 Nev. 398, 403, 132 P.3d 574, 577 (2006) (applying the three-step analysis to review a *Batson* challenge). This court has previously recognized that the three steps require:

> (1) the opponent of the peremptory challenge must make out a prima facie case of discrimination, (2) the production burden then shifts to the proponent of the challenge to assert a neutral explanation for the challenge, and (3) the [district] court must then decide whether the opponent of the challenge has proved purposeful discrimination.

*Ford,* 122 Nev. at 403, 132 P.3d at 577.

Regardless of whether or not the opponent of a peremptory challenge makes a sufficient prima facie case of discrimination, if the proponent of the challenge proffers a race-neutral explanation, the district court's assessment of the prima facie case becomes moot. *Doyle v. State,* 112 Nev. 879, 888, 921 P.2d 901, 907 (1996) (citing *Hernandez v. New York,* 500 U.S. 352, 359 (1991)), *overruled on other grounds by Kaczmarek v. State,* 120 Nev. 314, 333, 91 P.3d 16, 29 (2004). Here, the first step of the *Batson* inquiry became moot when the district court sought race-neutral justifications from the State for all three of its peremptory challenges to which Chavez-Juarez objected. Therefore, we need only address the second and third requirements under *Batson* as they apply to this case.

The second step of the *Batson* analysis requires the State to proffer a race-neutral reason for its peremptory challenge. *Ford,* 122 Nev. at 403, 132 P.3d at 577-78. However, "the State's neutral reasons for its peremptory challenges need not be persuasive or even plausible." *Id.* Furthermore, "[a] legitimate reason for excluding a juror [consistent with *Batson*] [need] not [be] a reason that makes sense, but a reason that does not deny equal protection." *Thomas v. State,* 114 Nev. 1127, 1137, 967 P.2d 1111, 1118 (1998) (internal quotations omitted). Therefore, the State satisfies its burden under step two if it provides a facially race-neutral justification for its strike. *Id.; see also Ford,* 122 Nev. at 403, 132 P.3d at 577-78.

Once the State proffers race-neutral reasons, the third step requires the district court to assess whether "the *opponent of the challenge* has proved purposeful discrimination." *Ford,* 122 Nev. at 403, 132 P.3d at 577 (emphasis added). "[T]he defendant bears a heavy burden in

demonstrating that the State's facially race-neutral explanation is pretext for discrimination." *Conner*, 130 Nev. at ___, 327 P.3d at 509; *see also Rice v. Collins*, 546 U.S. 333, 338 (2006) (holding that "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike" (internal quotations omitted)). "In order to carry that burden, the defendant must offer some analysis of the relevant considerations which is sufficient to demonstrate that it is more likely than not that the State engaged in purposeful discrimination." *Conner*, 130 Nev. at ___, 327 P.3d at 509 (emphasis omitted).

For the reasons stated below, we hold that the district court did not abuse its discretion in rejecting Chavez-Juarez's *Batson* challenges.

*The district court did not abuse its discretion by overruling Chavez-Juarez's Batson challenge regarding prospective juror number 2*

During voir dire, the State asked prospective juror number 2 whether she could follow the law, irrespective of what a particular law may require. Prospective juror number 2 replied that she could not and expressed her concerns about not being heard by the justice system and her potential willingness to fight to change a law if it was important to her. The State also observed, on the record, that prospective juror number 2 hesitated in response to questions about her willingness to comply with instructions. The State then used a peremptory challenge to exclude prospective juror number 2 from the venire. Chavez-Juarez then raised a *Batson* challenge by asking the reason for the State's peremptory challenge, but the State responded that it was concerned by prospective juror number 2's responses and hesitations when answering questions about following instructions. This explanation fulfilled the second step's requirement because concern over responses and hesitations was a race-

neutral reason for striking prospective juror number 2. *See Ford*, 122 Nev. at 403, 132 P.3d at 577-78.

Chavez-Juarez did not produce any evidence or argument that would support a finding of discriminatory intent. Instead, he merely asked for the reason for the State's challenge. The only evidence before the district court when it resolved the challenge regarding prospective juror number 2 was the State's race-neutral justifications. Therefore, the district court did not abuse its discretion when it allowed the State to use a peremptory challenge to strike prospective juror number 2.

*The district court did not abuse its discretion by overruling Chavez-Juarez's Batson challenge regarding prospective juror number 5*

In response to the State's questions during voir dire, prospective juror number 5 stated that she believed a victim must *physically resist* to demonstrate a lack of consent. After the prosecutor asked additional questions which provided prospective juror number 5 with opportunities to explain her response, she did not qualify her answer and remained focused only on what she would do personally. Chavez-Juarez argues that prospective juror number 5's answers were similar to those of another veniremember who was eventually seated on the jury, but that assertion is belied by the record. Although the other juror agreed that he *personally* would do what he could to resist against an assault, he recognized that other factors such as age, size, and fear could prevent a victim from demonstrating a lack of consent by physically resisting. Therefore, prospective juror number 5's unqualified responses were significantly different from the responses of the other prospective juror.

The State used a peremptory challenge on prospective juror number 5 and Chavez-Juarez responded by raising his second *Batson* challenge. The State justified its challenge by stating its concerns

SUPREME COURT
OF
NEVADA

(O) 1947A

regarding prospective juror number 5's understanding of consent, especially considering the facts of this case that involved a child victim who did not physically resist her attacker. Therefore, the State proffered a race-neutral justification for its peremptory strike and thereby satisfied the requirements of the second step of the *Batson* inquiry. *See Ford*, 122 Nev. at 403, 132 P.3d at 577-78. Chavez-Juarez neither argued that the State's race-neutral reason was pretextual nor proffered evidence to demonstrate that the State acted with discriminatory intent. In the absence of such evidence, the district court did not abuse its discretion by accepting the State's race-neutral justification and overruling Chavez-Juarez's *Batson* challenge regarding the disqualification of prospective juror number 5.

> *The district court did not abuse its discretion by overruling Chavez-Juarez's challenge of prospective juror number 19*

When the State used a peremptory challenge on prospective juror number 19, Chavez-Juarez made a *Batson* challenge by requesting that the State justify its use of a challenge on another Hispanic member of the venire. The State responded that prospective juror number 19 was unqualified to serve on a jury because he had a felony drug conviction and a history of removals from the United States for being present in the country illegally. However, the prosecutors did not strike him for cause so as to not embarrass him in front of the rest of the venire. Additionally, the State argued that prospective juror number 19 had mentioned having criminal experience and was "nodding and nodding off" during voir dire. Since "the State's neutral reasons for its peremptory challenges need not be persuasive or even plausible," the State met its burden under step two because its reasons were not "inherent[ly]" discriminatory. *Ford*, 122 Nev. at 403, 132 P.3d at 577-78. The district court found that the State's

proffered reasons were "not so illusory as I use the term, or possibly illusory, as for me to sustain a *Batson* challenge."

Again, Chavez-Juarez did not proffer evidence or analysis to demonstrate that the State's race-neutral justifications were pretextual. Therefore, the district court did not abuse its discretion by accepting the State's race-neutral justifications and overruling Chavez-Juarez's *Batson* challenge regarding prospective juror number 19.

*The district court did not abuse its discretion in sentencing Chavez-Juarez*

Chavez-Juarez argues that the district court abused its discretion by imposing a sentence based on his refusal to admit guilt. He relies on what he contends is a "well settled" Nevada rule "that a district court abuses its sentencing discretion when it relies on a defendant's refusal to admit guilt and take responsibility in fashioning a sentence."

We review a district court's imposition of a sentence for an abuse of discretion. *Parrish v. State*, 116 Nev. 982, 989, 12 P.3d 953, 957 (2000). The reliance upon prejudicial matters "constitutes an abuse of discretion that necessitates a resentencing hearing before a different judge." *Castillo v. State*, 110 Nev. 535, 545, 874 P.2d 1252, 1259 (1994), *disapproved of on other grounds by Wood v. State*, 111 Nev. 428, 430, 892 P.2d 944, 946 (1995).

Chavez-Juarez correctly cites Nevada caselaw for the principle that reliance on a defendant's refusal to admit guilt and take responsibility at sentencing constitutes an abuse of discretion. *Brake v. State*, 113 Nev. 579, 584-85, 939 P.2d 1029, 1032-33 (1997); *see also Brown v. State*, 113 Nev. 275, 290-91, 934 P.2d 235, 245-46 (1997); *Thomas v. State*, 99 Nev. 757, 758, 670 P.2d 111, 112 (1983); *Bushnell v. State*, 97 Nev. 591, 593-94, 637 P.2d 529, 531 (1981). However, that is not what took place in the district court here, and an examination of the cases

Chavez-Juarez relies upon reveals their inapplicability to the facts of the present case.

In *Brake*, when the defendant refused to accept guilt, the district court told the defendant that for "your lack of remorse, this [c]ourt reaches the conclusion that the recommendation of the State is appropriate." 113 Nev. at 584, 939 P.2d at 1033 (internal quotations omitted). The *Brake* court held that because "it appears that the district court's consideration of [the defendant]'s lack of remorse likely resulted in the harshest possible sentence being assessed," the district court abused its discretion. *Id.* at 585, 939 P.2d at 1033.

Likewise, in *Brown*, the district court warned the defendant that if he did not accept guilt, then the district court would not show mercy and would impose a harsher sentence. 113 Nev. at 290, 934 P.2d at 245. After the defendant refused to do so, the district court imposed a harsher sentence as a *direct* result of this refusal. *Id.* at 290-91, 934 P.2d at 245; *see also Thomas*, 99 Nev. at 758, 670 P.2d at 112 (holding that the district court abused its discretion because the defendant's refusal to admit guilt was a central consideration at sentencing); *Bushnell*, 97 Nev. at 593, 637 P.2d at 531 (holding that the district court abused its discretion at sentencing because the "sole reason" for the district court's imposition of a harsher sentence was the defendant's decision to maintain his innocence).

Unlike the *Brake, Brown, Bushnell*, and *Thomas* defendants' refusals to admit guilt, Chavez-Juarez's denial of guilt did not directly contribute to his sentence and was not a central consideration at sentencing. The district court did, however, consider comments Chavez-Juarez made about his victim and her mother when he exercised his right

to allocution. Among other statements, Chavez-Juarez remarked that their absence from the sentencing hearing "tell[s] you a lot of things about them," that the victim's mother was a prostitute and that he believed the victim learned her behavior from her prostitute mother.

The district court then imposed the sentence of 55-years-to-life and orally presented its justification for the sentence. In doing so, the district court discussed the nature of the case and the trial proceedings and concluded by stating that "engaging in these acts has earned [Chavez-Juarez] the sentences just imposed." As part of its sentencing statement, the district court made the following comments regarding Chavez-Juarez:

> His statements to the police, and his testimony at trial, reveal that his denial about the reality of what occurred is complete.
>
> His denial is complete in the sense that, as his allocution . . . reveals, he has projected, and blaming on an 8-year-old at the time of these offenses, the sexual misconduct that occurred.
>
> . . . [H]e would indicate to me that the 8- or 9-year-old victim was acting like a prostitute. And that kind of projection demonstrates a complete denial of responsibility for among the most serious kinds of misconduct which can be committed in our society.

Contrary to Chavez-Juarez's argument that these comments were about his refusal to admit guilt, they were instead made in the context of discussing Chavez-Juarez's statements blaming the victim and her mother for his crimes, and his statements contradicting his earlier confession.[1] At no point did the district court state that it based its

---

[1]Chavez-Juarez raised the issue of his having taken responsibility for his actions when he argued that his confession to the police should be a
*continued on next page...*

SUPREME COURT
OF
NEVADA

(O) 1947A

9

sentence on Chavez-Juarez's refusal to accept responsibility or to admit guilt. The district court instead concluded that the defendant's *conduct* "earned" him the harsh sentence. Therefore, the district court did not abuse its discretion by imposing a sentence based on Chavez-Juarez's criminal conduct.

*Conclusion*

The district court did not abuse its discretion in overruling Chavez-Juarez's three *Batson* challenges to the State's use of peremptory strikes. In addition, the district court did not abuse its discretion in imposing Chavez-Juarez's sentence. Therefore, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Saitta

_____

*...continued*
mitigating factor because he allegedly cooperated with the police. Therefore, any reference by the district court to Chavez-Juarez's denial of responsibility was in response to the inconsistencies between Chavez-Juarez's seeking credit for his taped confession and his later denials regarding that confession.

cc:    Hon. Egan K. Walker, District Judge
        Washoe County Public Defender
        Attorney General/Carson City
        Washoe County District Attorney
        Washoe District Court Clerk