FILED
United States Court of Appeals
Tenth Circuit

**November 7, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JACK V. SMALLEY,

    Defendant - Appellant.

No. 21-1167
(D.C. No. 1:19-CR-00409-DDD-1)
(D. Colorado)

---

## ORDER AND JUDGMENT[*]

---

Before **HARTZ, MORITZ,** and **SEYMOUR,** Circuit Judges.

---

In April of 2021, Mr. Jack V. Smalley was tried on one count of bank fraud

pursuant to 18 U.S.C. § 1344.  At the conclusion of voir dire, Mr. Smalley asserted a

claim under *Batson v. Kentucky*, 476 U.S. 79 (1986), contending that the government had

intentionally discriminated by using three of its six peremptory challenges to strike

Hispanic panelists.  The government offered neutral reasons for the strikes and no further

record was made by Mr. Smalley.  Thereafter, the district court overruled the challenge

and the jury convicted Mr. Smalley.  On appeal, Mr. Smalley argues that the district court

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

committed clear error in overruling the *Batson* challenge.  We conclude that Mr. Smalley failed to meet his burden of proving intentional discrimination by the government in selecting the jury and we therefore affirm.

## Background

In 2015, Mr. Smalley applied for a bank loan to purchase a million-dollar home in Colorado Springs.  On the loan application, he represented that his annual income was $200,000.  He provided a letter from his employer and a paystub reflecting this salary.  The credit union issued a loan based on the documentation.  At trial, the government presented evidence that Mr. Smalley had lied about his income and had provided fraudulent documents to obtain the loan.  He was convicted of one count of bank fraud pursuant to 18 U.S.C. § 1344 and sentenced to six months in prison and three years of supervised release.

## The Batson Challenge

This appeal concerns the selection of the jurors who decided Mr. Smalley's fate.  Under the district court's jury selection procedure, the court conducted an initial round of voir dire followed by a round of voir dire conducted by the parties.  When that process was complete, the parties exercised their peremptory strikes.  The government was permitted to peremptorily strike six people from the pool of prospective jurors (Jurors #1–28) and one person from the pool of prospective alternates (Jurors #29–31).  Supp. Rec., vol. I at 5–6.

During the attorney-led voir dire, counsel for Mr. Smalley, Frank Moya, asked the panel whether anyone thought the federal government had too much power.  Rec., vol. V

2

at 71. Juror #30 was the only person to raise a hand. *Id.* Mr. Moya asked him why he felt that way, leading to the following exchange:

> [JUROR #30]: Just on a federal level the bureaucratic system with the alphabet agencies I believe has grown too much.
>
> MR. MOYA: How about the Government size generally? Do you feel the Government is too big, or do you feel one way or another about it?
>
> [JUROR #30]: I'm inclined to think the Government is getting too large, but I understand the need for it.

*Id.* When Mr. Moya asked if anyone agreed or disagreed with Juror #30, Juror #15 said, "I agree." *Id.*

Mr. Moya then turned to Juror #6 and asked, "[W]hat do you think about that?" *Id.* He responded, "Simply put, it is a necessary evil. There needs to be checks and balances. Do I agree with everything? No. Do I disagree with some things? Yes." *Id.* Mr. Moya then asked whether Juror #6 would agree "that one function of a jury, at least one part of a job of a jury, is to be a check and balance on Government using its power to prosecute." *Id.* at 72. Juror #6 responded, "I'd agree." *Id.* With that, Mr. Moya wrapped up his questioning of the panel, and the parties identified the jurors they wanted to exclude using their peremptory strikes.

That's when Mr. Moya approached the bench to raise a *Batson* challenge. By now, the three-step process used to evaluate *Batson* challenges is well known. First, the party challenging a strike as racially motivated "must make out a prima facie case 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.'" *Johnson v. California*, 545 U.S. 162, 168 (2005) (quoting *Batson*, 476 U.S. at

3

93–94).  Second, if the proponent of the *Batson* challenge meets its initial burden on the prima facie case, "the 'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes." *Id.* (quoting *Batson*, 476 U.S. at 94).  "Although the prosecutor must present a comprehensible reason, '[t]he second step of this process does not demand an explanation that is persuasive, or even plausible'; so long as the reason is not inherently discriminatory, it suffices." *Rice v. Collins*, 546 U.S. 333, 338 (2006) (alteration in original) (quoting *Purkett v. Elem*, 514 U.S. 765, 767–68 (1995) (per curiam)).  "Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination." *Id.* (citing *Batson*, 476 U.S. at 98).

Here, the district court followed this procedure, albeit in an abbreviated fashion. At step one, Mr. Moya asserted that only three members of the prospective-juror panel— Jurors #1, #7, and #15—were Hispanic, and that the government had stricken all three.  "I can only think it's racially based because there's no other basis I can see that those witnesses should be dismissed from this panel on a peremptory basis," he said.  Rec., vol. V at 76. The district court expressed doubts that this was enough to establish a prima facie case of discrimination but nevertheless advanced to step two,[1] asking the government to "provide the rationale for those strikes." *Id.*   The government responded as follows:

---

[1] "[T]he preliminary issue of whether the defendant had made a prima facie showing becomes moot" if the district court chooses, as it did here, to move to the remaining steps of the *Batson* challenge. *Hernandez v. New York*, 500 U.S. 352, 359 (1991).

[T]he reason the Government struck [Juror #15] was based on his answer what [*sic*] counsel asked him in his questioning regarding the size of Government and Government being too big.

So his answer to counsel's question about the Government being too big . . . . I work for the bureaucracy. I felt that could be held against us for being over vindictive on a prosecution matter that he might not have interest in. That's, basically, why I struck him.

[Juror #7], he's unemployed. He looks young. He lives with his mother. Doesn't have any life experiences. He doesn't have a job. That's why I struck him. I don't think he would offer much or has the experience to be on a white collar mortgage fraud case.

Finally, [Juror #1], he's the last one I struck. The reason I struck him is his demeanor. He didn't seem too interested in hearing the case based upon his answers. Pretty short. And, you know, he answered the questions, no doubt about it. It was his demeanor that I think his interest wasn't there to sit on the jury.

*Id.* at 76–77. Mr. Smalley admits that the government met the step-two standard by offering ethnicity-neutral reasons for the strikes. Aplt. Br. at 20.

After the prosecutor proffered his reasons, Mr. Moya stated, "I don't have an additional record." Rec., vol. V at 77–78. The court then denied the challenge but asked, "[I]s there anything else before we excuse these jurors and get started?" *Id.* at 78. Mr. Moya said, "No," and the challenged jurors were excused. *Id.*

**Standard of Review**

The parties dispute whether the plain error or clear error standard applies to our review. *See United States v. Vann*, 776 F.3d 746, 755–56 (10th Cir. 2015) (noting that some courts have found a defendant's failure to rebut the government's nondiscriminatory reasons amounts to forfeiture or waiver but applying "a less deferential standard"). We

need not decide which standard applies, however, as Mr. Smalley's appeal would fail under either standard.

**Discussion**

On appeal, Mr. Smalley offers a comparative juror analysis to support his assertion that the prosecutor's stated reasons for striking two of the three Hispanic jurors, Juror #15 and Juror #7, were pretextual. With respect to Juror #15, Mr. Smalley argues that the government's stated reason for striking him, concern about the size of government, applied with even more force to prospective Juror #6, who was not Hispanic and was not stricken. Aplt. Br. at 12. He notes that Juror #15 only agreed with Juror #30, who said he was "inclined to think" that the federal government had grown too large, while Juror #6 had described the size of government as a "necessary evil" and agreed that one of the jury's roles was to serve as a check on government power. *Id.* at 12–13. If the prosecutor were really concerned about anti-government sentiment, Mr. Smalley argues, he would have struck Juror #6, not Juror #15. Mr. Smalley asserts that the government's decision not to do so is compelling evidence that the government's stated reason for the strike was a pretext for ethnic discrimination.

As for the Juror #7, Mr. Smalley contends that a comparison with Juror #25 shows that the government's stated reason for the strike, a lack of "life experience," was also pretextual. *Id.* at 13–14. Although both were unemployed and living with their mothers, the government did not strike Juror #25, who was not Hispanic.

Mr. Smalley contends that the comparator evidence, together with the fact that the government used half of its six peremptory strikes to remove the only Hispanics on the

panel, is sufficient to show that the district court's rejection of his *Batson* challenge was clearly erroneous. We disagree.

Mr. Smalley correctly asserts that we can consider his comparative juror analysis for the first time on appeal,[2] but his failure to develop this argument below has severely undermined its probative value. As we explained in *United States v. Vann*, 776 F.3d 746, 756 (10th Cir. 2015), "a *Batson* challenge is best handled at the time when the judge and the attorney's conduct are at issue." As the Supreme Court has explained:

> [A] retrospective comparison of jurors based on a cold appellate record may be very misleading when alleged similarities were not raised at trial. In that situation, an appellate court must be mindful that an exploration of the alleged similarities at the time of trial might have shown that the jurors in question were not really comparable.

*Snyder v. Louisiana*, 552 U.S. 472, 483 (2008). Furthermore, only the trial judge can evaluate the demeanor of the prosecutor for evidence of discriminatory intent, as well the demeanor of the stricken juror to determine whether the proffered reasoning is credible.

---

[2] Based on *Miller-El v. Dretke*, 545 U.S. 231, 241 n.2 (2005), and decisions from other circuits, we can consider the post-trial juror analysis because all of the facts relied upon are in the voir dire transcript. As explained by the Sixth Circuit:

> Often, district courts will be well positioned to rule on *Batson* challenges without resorting to a comparison among venirepersons. But because we can never be present to observe voir dire, a comparative juror analysis will usually be the only tool we have at our disposal to fairly evaluate *Batson* claims. We therefore think it best to conduct a comparative juror analysis on appeal whenever the basis for comparison has been sufficiently explored that the analysis will not be unfair to the government.

*United States v. Atkins*, 843 F.3d 625, 637 (6th Cir. 2016) (citations omitted).

*Id.* at 477.  Where, as here, the defendant makes no challenge to the government's proffered neutral reasoning for the strikes, the district court has no meaningful opportunity to fully evaluate the credibility of the proffer before the jury is empaneled. *See Vann*, 776 F.3d at 756.

Mr. Smalley's failure to challenge the government's proffer leaves us precious little to work with.  In the case of Juror #15, Mr. Smalley argues that Juror #6's statements betrayed an even stronger anti-government bias than those by Juror #15, but this is not clearly established by the record.  For example, one could just as easily argue that by describing government as a "necessary evil," Juror #6 affirmatively recognized the validity of government power in a way that Juror #15 did not, a factor the prosecutor could plausibly have interpreted as favorable to the government's position.  We are also unable to discern from the record whether Juror #15's demeanor may have informed the prosecutor's decision or why the prosecutor believed that Juror #15 may have been disinterested in the bank fraud case.

Mr. Smalley's comparison of Jurors #7 and #25 is even more feeble.  The government's stated concern was a perceived lack of life experience that would be helpful to the government in a white-collar mortgage fraud case.  And while Jurors #7 and #25 were both young and living with their mothers, Juror #25 was a fourth-year undergraduate student studying history, government, and secondary education, while Juror #7 was unemployed. This difference in current life circumstances could have plausibly led the prosecutor to differentiate the two jurors.

8

In sum, Mr. Smalley's comparator argument lacks the evidentiary heft necessary to establish either clear or plain error. Although comparative juror evidence may provide evidence of discrimination, it is not necessarily conclusive. *Grant v. Royal*, 886 F.3d 874, 950–51 (10th Cir. 2018). Here, the stricken jurors and the comparators do bear some similarity, but they also appear to differ in some respects unrelated to their ethnicities. This leads to more than one plausible interpretation of the voir dire transcript.

Had Mr. Smalley raised the comparisons below, the district court would have had an opportunity to tease out whether the government decided to strike the Hispanic jurors because of these or other distinctions rather than invidious discrimination. By raising them for the first time on appeal, he essentially asks us to presume the latter. We decline to do so. *See Vann*, 776 F.3d at 754 (where defendant failed to raise comparators during voir dire, he failed to carry his burden of persuasion because "no evidence of animus existed for the district court to consider at the time [the court] made its decision").

## Conclusion

Based on the foregoing, we are not persuaded that the district court erred when it denied Mr. Smalley's *Batson* challenge. Accordingly, we affirm.

Entered for the Court

Stephanie K. Seymour
Circuit Judge

9